Elizabeth Hopkins on behalf of Juan Castillo, the Plaintiff Appellant in this matter. I'd like to reserve two minutes of my time for rebuttal, if I could. Mr. Castillo filed suit under ERISA's equity provision to recover losses in the form of attorney's fees that he would not have incurred but for MetLife's breaches of its duties of loyalty and care in cutting off his disability benefits based on a patently incorrect citation of the Governing Plan language and based on a rollover of retirement funds into an IRA that MetLife knew happened almost four years earlier. At issue in this appeal is whether Mr. Castillo has stated a plausible claim for fiduciary breach and whether this can be remedied by surcharging MetLife for the fees that Mr. Castillo incurred. There are essentially three Supreme Court cases that answer these questions. First, the 1996 decision in Verity v. Howe where the Supreme Court held that ERISA requires fiduciaries to speak truthfully to plan participants and that Section 502A3 of ERISA allows individual claimants to sue for relief and that it provides a safety net to remedy wrongs that aren't elsewhere adequately addressed. Second, the Supreme Court's decision in 2008 in MetLife v. Glenn where the court held that citing claims for benefits is a fiduciary act. And third, I would point the court to the 2011 decision in Cigna v. Amara where the Supreme Court held that Section 502A3 encompasses a surcharge remedy as an available equitable remedy which allows courts to impose make-whole monetary relief to remedy any fiduciary breach. Ms. Hopkins, if you could just address what's bothering me. Help me understand your argument a little bit better. So under, we said in Cain v. Carpenters that under the fee-shifting provision of 1132G, when there's a claim for benefits, if the plaintiff prevails, there's a right to apply for attorney's fees. And there in Cain, we said that you can't recover fees for work done in the administrative process. Isn't that correct? Correct, Your Honor. Okay. So now, how do we square that principle with your argument? Well, we're not suing under Section 502G. No, I understand that, but aren't you essentially just trying to get around our holding by turning to 1132A and saying all we're doing is seeking appropriate relief for breach of fiduciary duty and we can surcharge the trustee for the time we expended in pursuing an administrative appeal? Well, I would say a couple of things about that. First of all, 1132G, the decision in Cain was based on the particular language of 1132G, which refers to any action. And this court read that as meaning a legal proceeding, a lawsuit essentially, and so as precluding a plaintiff or any party from having fees assessed based on the work of their attorneys prior to the lawsuit. 502A3 is in some ways a broader provision. It allows any appropriate equitable relief. And this court, as I've just said in these three decisions, has interpreted that. Well, actually, it's mostly a decision, but interpreted that by reference to the trust law, which clearly, if you look at the restatement and many, many trust law decisions, it's clear that that includes attorney's fees. So Section 502A3 encompasses a remedy, an equitable remedy for attorney's fees, and it is designed, as the court said in Verity and many other cases, as a safety net to remedy wrongs that aren't elsewhere addressed. Here, Mr. Castillo is only liable for these fees, we assert, because of the fiduciary breaches, the malfeasance on the part of MetLife. And this is precisely the kind of situation where the trust law allowed a court, in its discretion, to award attorney's fees to make, as a make-whole monetary relief, as make-whole monetary relief, and that's what we're asking for. I'd also like to point out that this doesn't contradict Section 1132B. In other words, if there had been, if they had denied him benefits, I mean, if the matter hadn't been resolved and a lawsuit ensued, and you prevailed on your argument, he wouldn't have been able to recover fees, is that correct, for the administrative process? We would not have been able to recover fees if this were brought as a claim for benefits under 1132A1B. But we've sued as a matter of fiduciary breach, and we probably could have in that case too, and as part of a remedy associated with a fiduciary breach, which I have to say is only assessed against a fiduciary. It's not, contrary to what MetLife has indicated, that's not assessed against a plan. So it would be the fiduciary that's liable for that money. So it wouldn't undermine the funding of the plan in a case, you know, say a pension case where there's a funded plan. It's a remedy that's assessed against a breaching fiduciary. You know, well-established remedy that the court, you know, recognized in the Amara case. And, you know, I would also say that, you know, recognizing a fee award or a claim for fees in the form of surcharge under 1132A3 really doesn't undermine or render superfluous Section 1132G because they really cover very different grounds. Can I interrupt you please? I have a question. So I agree with you generally on your characterization of CON and its treatment of the award of attorney's fees under 1132G. But the court did talk about a purpose of this analysis and that allowing fees in the administrative proceeding would undermine the purpose of a risk, which has some bearing on what we're talking about now. And there's also the issue that Congress explicitly provided for provision for fees in 1132G, but not elsewhere. Not in 1132A3 where you have to go through multiple steps to reach your award, your argument that the court could award the fees in its discretion. So, you know, given the statutes or the candidates of construction, how do we find that Congress is explicitly overruling the American rule and what intended to allow attorney's fees under 1132A3 when it didn't cite them, but it did in 1132G? Well, as far as the American rule goes, a well-established exception to the American rule is the discretion of courts acting in trust or in equity to award attorney's fees in such cases. And, you know, a really good discussion of this is in that Dardovich case from the Third Circuit that I cited. These awards are not just limited to common fund cases. And in fact, courts in equity consider all sorts of other factors, including the nature and extent of fiduciary wrongdoing. So that's, you know, that's how you get around the American rule. As far as the notion that the specific governs the general, I don't think that that really has applicability here. Because, you know, the Supreme Court has repeatedly recognized that the very purpose of this appropriate equitable relief under 502A3 is to remedy wrongs that are not otherwise adequately addressed in the other provisions. So that this is meant to be a safety net for people. And so, you know, just because it's not allowed in a case that doesn't necessarily involve fiduciary breach under 502G or 1132G doesn't mean that where a plan participant who's really at the center of the whole protective remedial scheme has been harmed by a fiduciary breach that they can't be made whole for that. So under the equitable principles that allow surcharge, and you're taking stuff from surcharge, that includes attorney's fees, within the court's discretion, does that require showing a bad faith? Or are those fees available just for some form of negligence? It requires a showing of fiduciary breach. But it's a discretionary award in the same sense, in a similar sense, I would say, to 1132G. And that the court can take, can factor in, you know, many kinds of factors, including bad faith in assessing the award. But it's based on fiduciary breach. With regard to that, if I can take, I know I'm a little bit over here, but if I could take a minute. You know, I don't think that means, I don't agree with MetLife that that means that this will open the floodgates to awards of fees in every case involving a denial of a benefit claim. Because, you know, what ERISA requires is that fiduciaries act faithfully, and that they act under a standard of care that as a prudent person would under like circumstances. That's a high bar, I'll admit, but it doesn't require perfection. And as long as claims administrators, claims fiduciaries are deciding cases properly, you know, based on the information that they have at the time, there's no reason to think that that would be a fiduciary breach. Even though later information might prove them wrong, and they might change their minds about it. So I think that, you know, this is not going to be for every case. This is going to be for cases of fiduciary breach. Okay. Okay. Oh, sure. If I could squeeze in one question. I thank you. This will be brief. Do you have an example of another situation where there is a statute that has a subsection or a section that does not allow for the recovery of fees as G1 here does. And yet there's another section, A3, which has broad language that arguably might allow for fees, and where the court has held that that broader section is the effective section and not the one that's more limiting. I don't have an example of it in the fee context. This is, you know, admittedly, this issue is novel, I would say, and there isn't a lot of case law on it. The closest case law or the most relevant case law, I would say, is Judge Rogers' decision from the Northern District of California in Zisk, which the district court relied on saying that there was a fiduciary breach. But that case also allowed the claimant to go forward with a claim for attorney's fees based in part or primarily on work that was done prior to the lawsuit. But we were not able to find a case precisely on point to answer your question. Thank you. Thank you. I'll give you a minute for rebuttal after we hear from Ms. Murray. Good morning. I want to start out first by addressing the arguments regarding Cigna v. Amara and the general trust law principles, which Costillo contends supports a claim of attorney fee under A3. First, we have to start by looking at the statute. And subsection A3 does not include an express statutory command for an award of fees that would provide an exception to the American rule under the Supreme Court's decision of NASA. In the absence of an express statutory command, the courts are not authorized to award fees. It is correct that the Supreme Court and other courts have looked to trust principles in interpreting the ERISA statutes. And in Amara, the court did rule that a surcharge remedy could extend to a breach of fiduciary duty claim. But there's absolutely nothing in Amara that suggests a remedy that would permit a claimant to recover pre-litigation fees incurred during the mandatory administrative review process under ERISA. So is it your position that general trust principles have no role in our decision in this case? No, Your Honor. That is not my position. But you have to go back and look at Verity and the Hughes Aircraft case and other cases where the Supreme Court has looked to trust principles. And I want to quote from Verity where the court says that trust law offers only a starting point. After which, courts must go on to ask whether and to what extent the language of the ERISA statutes, its structure, and its purposes require a departure from the common law trust requirements. The court went on to say, in doing so, the courts must take into account the competing congressional purposes and Congress's desire to offer employees protection benefits on the one hand, as compared to the desire not to create a system that is so complex that litigation expenses specifically would unduly discourage employers from offering welfare benefit plans in the first place. So on that first point, applying the relief here just under general trust principles is not consistent with ERISA's remedial structure for two reasons. First, the court noted in Verity that appropriate equitable relief is only allowed under subsection A3 if the alleged breach or injury is not otherwise addressed in ERISA's remedial scheme. In this context, when you're talking about claims handling breaches or enforcing the terms of the plan or seeking benefits, that is specifically addressed in subsection A1B2 and in the Department of Labor's implementing regulations, which require exhaustion of the administrative review process. And if that does not result in a favorable determination to the claimant, then they may file a suit under subsection A1B. And if they file the suit and they prevail, then they must meet a five-factor test that's been recognized by the Ninth Circuit and Hummel. It's also been recognized by the Supreme Court and Hart. Then and only then will the court exercise its discretion to award fees. And one of the primary factors that the courts look to in deciding whether to award fees under subsection 1132G is success on the merits. And the courts have interpreted success on the merits to mean that there has to be something, some judicial determination. What Mr. Castillo is doing here is seeking to make an end run around CAN or CON, if I'm pronouncing it incorrectly, which expressly bars an award of pre-litigation fees under 1132G. And he's also making an end run around the factors, the carefully considered factors that the courts look to, to determine whether a plaintiff who proceeds under A12B can even get the fees. So, going back to the argument that the trust principles and common law of trust permits the award here, MetLife respectfully disagrees, because you can't use trust law to override or make an end run around ERISA's remediation. Can you comment on the rough joke? I mean, doesn't our case law allow a claimant to pursue a claim for denial of benefits, and at the same time pursue a claim for a breach of fiduciary duty? I know there's some case law from other circuits that says you can't, but I thought our case law was that both of those could be pursued throughout the litigation. Yes, you're correct. You can pursue alternate claims under A1B and under A3, but that's not what Mr. Casillo is seeking to do here. He doesn't have a claim under A1B because he's already obtained all of his benefits. So, you're saying he doesn't have a denial of benefits claim, and I understand he prevailed, so he doesn't have a claim to pursue, but does that mean he then has to give up the breach of fiduciary duty claim? I mean, I know in this context we're talking about attorney's fees. Are there any other damages that would possibly come into play in a breach of fiduciary duty claim? The only damages that are alleged here are attorney's fees. That really isn't quite her question. Are there any other kind of damages that could be recovered? You know, Your Honor, I have to say that the case law interpreting the surcharge remedy, it's evolving, and the way that the Ninth Circuit and courts have interpreted the surcharge remedy under trust law is typically to obtain benefits to restore value to the trust or an unjust enrichment. So, let me ask you a question just to be a little more specific. Sure. Suppose that when Metropolitan found out about the ERISA, what he did with his retirement funds, they just stopped paying him benefits, and he maybe couldn't make his mortgage payments, lost his house. In one of these breach fiduciary duty claims, could he recover damages for that? I am unaware of any case law that uses a surcharge remedy or the remedies under AMARA to award compensatory damages. Just as an example to get back to the other question. For example, if someone had, they were not able to pursue an A1B claim like in Verity, because they were no longer participants in the plan. This is a primary example where they used A3 to obtain benefits that they otherwise would have been entitled to under the terms of the plan had the fiduciary not made those misrepresentations. It's the best example that I can come up with as far as when A3 would permit recovery if there's no claim under A1B. But there's no case law that I have been found or been aware of that has used A3 to award attorney's fees, compensatory damages. This court that counsel referred to, it did indicate in that case that the claimant was seeking some type of compensatory damages, but the court expressed it declined to reach a decision as to what kind of relief might be available under A3. They just allowed the claim to go forward. Okay. I think Judge Zari had a question for you. Yes. It got answered. Thank you very much. But on this topic, other appropriate equitable relief, that's pretty broad, is it not? Yes, Your Honor, it is broad. But getting back also to the canon of the general, the specific governs the general, ERISA has very specific provisions addressing a claim for benefits, enforcing someone's rights under a plan for A1B, and they have a specific provision that governs attorney's fees, and that's 1132G. And to allow Mr. Castillo to use the broad language of A3 to otherwise circumvent the specific statutes in ERISA that address claims handling breaches, and address enforcements of rights under the terms of the plan, and address when the court may exercise discretion to award fees, that is simply not permitted. I see my time is running out, and I do want to just address one thing, because there's a significant reliance on this Third Circuit Dardovich case. The Third Circuit does not broadly hold that a court may order fees in any case involving suits by trust beneficiaries. And I included a rather long quote in my brief at page 145 of the court's decision. And if you read that very carefully, what the court is talking about is the common fund of the substantial benefit doctrine that is often employed in trust cases. And Mr. Dardovich himself was seeking to enforce his rights as a beneficiary of the trust and to the trust assets, which had been improperly taken by the trust fiduciary to pay his own fees. And very quickly, the restatement of trust that counsel mentions as well, that does not support an award of fees under trust law. As a matter of fact, that talks about restoring values of the trust estate, and trust distributions that have been lost as a result of a breach, and even subsection comment B2 to that section, it talks about award of fees under the Uniform Trust Code, Section 104, and it talks about use of the common fund doctrine. It's true that there are awards of attorney's fees in the trust context, but it's in the context of the common fund doctrine and the substantial benefit doctrine, which the Supreme Court has recognized as an express exemption under the American rule. And that is not what is happening here. Mr. Phillips benefits. He's not wishing benefits to the trust. Okay. Thank you, Ms. Murray. We appreciate your argument. So let's see. I'll have the clerk put two minutes up for rebuttal. Thank you, Your Honor. I'd like to address that last point first. In fact, the Dardovich decision at 145 to 146 does say that awards of fees are not limited in trust cases to common fund cases and that courts and equity can also consider other factors, such as the nature and extent of the fiduciary wrongdoing. Second, I'd like to point out that there are many, many post-Amara cases that have awarded compensatory damages. There's McCravey v. Metropolitan Life from the Fourth Circuit, Geralds v. Entergy Company from the Fifth Circuit, Kenseth v. Dean Health Plan from the Seventh Circuit, and there's a case whose name of which I'm forgetting that awarded as compensatory damages, tax consequences of a fiduciary breach. That case and there are a few cases other than maybe that tax case that award consequential as opposed to compensatory damages. Of course, that's a continuum depending on how direct the harm is, but many, many cases award compensatory damages. That doesn't mean, and I don't know of any cases, and I would find it hard to believe that a court would award. It's unlikely that a court would award the consequences like missing a mortgage payment, but certainly much more direct costs like the cost of attorney's fees or losing coverage that you would otherwise have. Courts, certainly the latter point, courts have awarded many times since Amara was decided. Opposing counsel characterizes your attempts in this case as an end run. Why isn't that an accurate description? Because it's not an end run around either the court's discretionary consideration of an award of fees. Certainly, the rejection by heart of the prevailing party standard under 1132G was in part based on trust law principles that said you had to have some success on the merits, and I think the same would hold true in an award of fees under subsection A3, as well as the other kinds of discretionary factors that courts consider under A3. So there's really no end run. This is a way of making a plan participant only when they've been harmed by a fiduciary breach hold because as the court in Cigna versus Amara said, in general, equity suffers not a wrong to be without a remedy, and that's exactly what we're going for here. In fact, because we're talking about equitable relief provision in ERISA, I'd really like to end with the equities. MetLife complains about the cost of paying fees and that these can be high, but certainly any fees are more easily and more appropriately borne by a huge insurance company than by a disabled, sick, or retired plan participant who's been harmed by fiduciary breaches, as we've alleged here. All right. Thank you. Thank you, Ms. Hopkins. We appreciate your arguments, counsel, and the matters submitted.
judges: Paez, Zouhary, Bade